William J. Conners, Jr. v. Commissioner.
Conners v. Commissioner
Docket No. 112766.
United States Tax Court
1943 Tax Ct. Memo LEXIS 187; 2 T.C.M. (CCH) 494; T.C.M. (RIA) 43352; July 21, 1943
*187 An amount advanced by petitioner to a corporation under the latter's promise to repay in cash, or upon a certain contingency, in shares of its stock, which contingency never materialized, held, to constitute a debt due petitioner by the corporation; held, further, petitioner has failed to prove error in respondent's determination that an amount subsequently advanced to the corporation, with the notation that it was in payment of shares of the latter's stock, was a subscription to capital and not a loan. Stanley G. Falk, Esq., for the petitioner. Francis S. Gettle, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: A deficiency in income tax of $602.23 was determined for the calendar year 1939. The question in issue is whether advances, totaling $2,500, made to Each Week, Inc. are to be treated as loans or capital advances. The facts were stipulated. The return was filed in the 28th district of New York. [The Facts] Petitioner was the owner of 30 shares of Each Week, Inc. out of 1,024 shares outstanding and held by 113 stockholders. This corporation was organized several years prior to 1938 to publish a weekly magazine known as "Town". It was intended *188 to sell this magazine to publishers of small weekly country newspapers to be issued to the subscribers as a supplement somewhat similar to the supplement frequently contained in the Sunday editions of large city newspapers. Early in 1938 the enterprise was in financial straits. A meeting of stockholders and new investors was held in April 1938. At that time an effort was made to raise $115,000 of additional capital to keep the enterprise going. On this occasion an agreement was entered into between various attending stockholders and Each Week, Inc., whereby the former would loan to the latter various sums of money for current operations. Petitioner's subscription on that occasion was in the amount of $1,500. The agreement provided that should Each Week be able to raise, by sale of shares or loans, a sum totaling $115,000 by November 1, 1938, then the subscribers, including petitioner, would accept shares of stock at par in payment of the sums advanced; but if the $115,000 was not raised within that time, then the sums loaned were repayable in cash on demand with interest at six per cent. Each Week was unable to raise the agreed sum of $115,000. A second meeting was called in November *189 1938 and another contract was entered into between Each Week and various stockholders including petitioner. At this time petitioner agreed to advance to Each Week $1,000 under conditions somewhat similar to those obtaining in the first contract. However, petitioner's check issued in payment of the subscription of $1,000, dated November 23, 1938, bore the notation made by petitioner, "Payment of 10 shares of Each Week, Inc." Each Week went into bankruptcy early in 1939 with no remaining assets either for stockholders or general creditors. [Opinion] The record is a meager one on which to reach a decision, but the stipulated facts appear to be all that were available. The advance of $1,500 was in terms a loan when made; it was repayable on demand and with interest at six per cent. Only in case Each Week was able adequately to finance itself was petitioner willing to accept shares of stock in repayment of the loan. We find that the advances, totaling $1,500, constituted a debt due petitioner from Each Week and, as it became worthless in the taxable year, petitioner is entitled to deduct the $1,500 under the bad debt provisions of the statute. Internal Revenue Code, section 23(k), *190 as amended by section 124 of the 1942 Revenue Act. While the $1,000 appears to have been advanced under a contract not materially different from the one under which the loan of $1,500 was made, we cannot overlook the fact that petitioner's check for $1,000 bore the notation that the money was given in payment of 10 shares of stock. The stipulated facts are not sufficient to overcome the presumption of correctness that attaches to respondent's treatment of this item. Our conclusion is that the $1,500 is deductible under the bad debt provisions of the statute and the $1,000 item should be treated as a short term capital loss. Decision will be entered under Rule 50.